# 24-2582-pr

## United States Court of Appeals
*for the*
## Second Circuit

———

MICHAEL WEBB,

*Plaintiff-Appellant,*

— v. —

EDMUND TROMBLEY, Corrections Officer, Great Meadow Correctional Facility, ERIC RICH, Corrections Officer, Great Meadow Correctional Facility, DONALD BOVAIR, Sergeant, Great Meadow Correctional Facility, JOHN DOE #1, Corrections Officer, Great Meadow Correctional Facility,

*Defendants-Appellees,*

CHRISTOPHER MILLER, Superintendent, Great Meadow Correctional Facility, NESMITH, P.A., Great Meadow Correctional Facility, CORRECTIONS OFFICER D. MCCLENNING, FKA John Doe #2,

*Defendants.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ELLIOT A. HALLAK
BRIAN D. GINSBERG
LISA A. LECOURS
DAVID J. PANZARELLA
HARRIS BEACH MURTHA CULLINA PLLC
677 Broadway, Suite 1101
Albany, New York 12207
(518) 427-9700

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................1

ARGUMENT ...................................................................................3

    I.    Appellees' so-called "plain text" argument does not analyze the plain language of 42 U.S.C. § 1997e(d)(2) ....................................3

    II.    The other decisions on which Appellees rely addressing 42 U.S.C. § 1997e(d)(2) have likewise failed to adhere to the plain text of the statute and should not be followed ...........................9

    III.    Appellees mischaracterize Mr. Webb's interpretation of the statute in an effort to align his arguments with those rejected in *Thompson* and *Walker*..................................................................12

    IV.    Appellees fail to cite any legislative history supporting their construction of the statute, instead relying on language from a House of Representatives report relating to a differently worded piece of legislation that never became law ...........................19

    V.    The Court should invoke the mini-*en banc* procedure, revisit its analysis and holding in *Shepherd*, and correct that decision's erroneous interpretation of section 1997e(d)(2) ...............23

CONCLUSION ..............................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Admiral Insurance Co. v. Niagara Transformer Corp.*,
  57 F.4th 85 (2d Cir. 2023) ............................................................. 4-5, 10

*Blissett v. Casey*,
  147 F.3d 218 (2d Cir. 1998) ...................................................................23

*Boivin v. Black*,
  225 F.3d 36 (1st Cir. 2000) ......................................................... 9, 10, 21

*Comm'r of Internal Rev. v. Lundy*,
  516 U.S. 235 (1996) ...............................................................................23

*Crouse-Hinds Co. v. InterNorth, Inc.*,
  634 F.2d 690 (2d Cir. 1980) ............................................................. 5, 10

*E. Armata, Inc. v. Korea Com. Bank*,
  367 F.3d 123 (2d Cir. 2004) ............................................................. 5, 10

*Foulk v. Charrier*,
  262 F.3d 687 (8th Cir. 2001) .................................................................10

*Harris v. Ricci*,
  595 F. App'x 128 (3d Cir. 2014) ..................................................... 10, 12

*J.S. v. N.Y. State Dep't of Corr.*,
  76 F.4th 32 (2d Cir. 2023) .....................................................................23

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
  16 F.4th 47 (2d Cir. 2021) .....................................................................23

*Knight First Amend. Inst. at Columbia Univ. v.
  United States Citizenship & Immigr. Servs.*,
  30 F.4th 318 (2d Cir. 2022) .....................................................................5

*Muldrow v. City of St. Louis*,
  601 U.S. 346 (2024) .................................................................................5

*Murphy v. Smith*,
  583 U.S. 220 (2020) .................................................................................7

*Parker v. Conway*,
  581 F.3d 198 (3d Cir. 2009) ...................................................................21

*Robbins v. Chronister*,
  435 F.3d 1238 (10th Cir. 2006) ..........................................................21

*Ryu v. Hope Bancorp, Inc.*,
  786 F. App'x 271 (2d Cir. 2019) ........................................................10

*Shepherd v. Goord*,
  662 F.3d 603 (2d Cir. 2011) ...................................................... *passim*

*Thompson v. Smith*,
  805 F. App'x 893 (11th Cir. 2020) ............................................. *passim*

*Torres v. Walker*,
  356 F.3d 238 (2d Cir. 2004) ..............................................................23

*Walker v. Bain*,
  257 F.3d 660 (6th Cir. 2001) ..................................................... *passim*

**Statutes & Other Authorities:**

18 U.S.C. § 3006A ................................................................................18

18 U.S.C. § 3006A(d)(2) .....................................................................19

42 U.S.C. § 1983 .................................................................................17

42 U.S.C. § 1988 ....................................................................... *passim*

42 U.S.C. § 1988(b) ...............................................................12, 14, 15

42 U.S.C. § 1997e(B)(i) ........................................................................2

42 U.S.C. § 1997e(d) ................................................................. 14, 15

42 U.S.C. § 1997e(d)(1) .............................................................. *passim*

42 U.S.C. § 1997e(d)(1)(A) ......................................................... 2, 15

42 U.S.C. § 1997e(d)(1)(B)(i) ..............................................................2

42 U.S.C. § 1997e(d)(1)(B)(ii) ...........................................................16

42 U.S.C. § 1997e(d)(2) .............................................................. *passim*

42 U.S.C. § 1997e(d)(3) .............................................................. *passim*

141 Cong. Rec. S14413-20 .................................................................22

H.R. Rep. No. 104-21 (1995) ....................................................... 19, 20

## PRELIMINARY STATEMENT

This Court should grant mini-*en banc* review to reconsider its decision in *Shepherd v. Goord*, 662 F.3d 603 (2d Cir. 2011), which erroneously interpreted the second sentence of 42 U.S.C. § 1997e(d)(2) – stating "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant" – as categorically precluding recovery of attorney's fees arising from monetary judgments in meritorious inmate civil rights actions that are greater than 150 percent of the judgment. Although Appellees purport to defend the Court's holding in *Shepherd* based on a "plain text" interpretation of the statute, their analysis fails to consider the language chosen by Congress, instead relying on a manipulated version that reorders clauses and adds words that do not appear in the statute. Appellees' reliance on the decisions of other United States courts of appeals – most of which likewise fail to actually interpret the statutory language as enacted by Congress – is misplaced. The decisions on which Appellees primarily rely, *Thompson v. Smith*, 805 F. App'x 893 (11th Cir. 2020) and *Walker v. Bain*, 257 F.3d 660 (6th Cir. 2001), engaged in a flawed analysis spurred by an extreme interpretation proffered by the plaintiffs in those cases that bears little relationship to the reasonable and textually based interpretation advanced by Mr. Webb here.

As Mr. Webb views the statute, the second sentence of section 1997e(d)(2) applies only in the situation to which it specifically refers: "[i]f the award of

1

attorney's fees is not greater than 150 percent of the judgment," s*ee* 42 U.S.C. § 1997e(d)(2), and, in that event, requires that, after a plaintiff contributes a portion of the judgment toward their payment, that any fees remaining "shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). In cases in which it applies, this provision functions as a presumption that such an award is reasonable and proportionate, reducing extended litigation over the amount of the award, thereby alleviating the burden on district courts to adjudicate fee contests for that subset of inmate attorney's fee claims. But, according to its plain text, the provision provides no instruction regarding the treatment of attorney's fees in an amount greater than 150 percent of a judgment. Those applications are governed only by 42 U.S.C. § 1988 and other limiting provisions of the Prison Litigation Reform Act of 1995 (PLRA), including the requirement that fees have been directly incurred in proving an actual violation of plaintiff's civil rights and be proportionately related to the court-ordered relief for the violation (sections 1997e(d)(1)(A) and (B)(i)); that plaintiff contribute up to 25 percent of any monetary judgment toward payment of fees (section 1997e(d)(2)) and that hourly rates underlying fee awards be capped at 150 percent of a statutory rate applicable to court-appointed counsel (section 1997e(d)(3)). Mr. Webb's analysis is compatible with both the plain language of the statute and the legislative intent underlying the PLRA.

While Appellees defend an interpretation of the statute that contravenes its plain language and finds no support in the PLRA's legislative history, Mr. Webb's reading of the second sentence of section 1997e(d)(2) does not require textual gymnastics or unsupported speculation about Congressional intent. The Court should employ its mini-*en banc* procedure to rectify the error in *Shepherd's* holding so that the second sentence of section 1997e(d)(2) can be applied as it is written and as Congress intended.

## ARGUMENT

### I. Appellees' so-called "plain text" argument does not analyze the plain language of 42 U.S.C. § 1997e(d)(2).

Although Appellees purport to interpret 42 U.S.C. § 1997e(d)(2) according to its plain text, *see* Opp. Br. at 13-20, they fail to analyze the statute as actually written. Indeed, section (d)(2) is quoted in its entirety only once in the Appellee's brief – in the Statement of the Case. *See* Opp. Br. at 4. In their analysis, Appellees rely on the same manipulation of the statutory language, including reordering of clauses and the addition of words not adopted by Congress, as the *Shepherd* panel, *see id.* at 14. In fact, as enacted by Congress, section 1997e(d)(2) provides:

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant. 42 U.S.C. § 1997e(d)(2).

3

Yet, in offering an interpretation of the second sentence in section (d)(2), which they describe as the "second restriction" on the amount of fees an inmate can obtain, Appellees do not attempt to grapple with the actual statutory language. *See* Opp. Br. at 11-13. Rather, they immediately redraft its language, asserting that the provision "directs that 'the excess shall be paid by the defendant,' but only 'if the award is not greater than 150 percent of the [monetary judgment.]'" *Id.* at 14.

Based on their modified, reconstructed version of the statute, which reorders clauses and adds words not inserted by Congress, Appellees then assert that the "most natural reading" of the altered statute is that, "if a judgment is greater than 150 percent, the defendant is not required to pay the balance." *Id.* This "more natural reading" turns the plain language of the statute on its head; by its terms, the second sentence addresses what is to occur "if the award of attorney's fees is not greater than 150 percent of the judgment" and nothing more. But, according to the Appellees' interpretation, it also governs what is to occur if the award is greater than 150 percent of the judgment – even though the sentence neither addresses that scenario, nor says what is to happen if attorney's fees exceed 150 percent of a judgment.

This analysis commits the same logical fallacy of the inverse that Mr. Webb addressed in his initial brief, which this Court has repeatedly made clear is not an appropriate tool of statutory interpretation. *See Admiral Insurance Co. v. Niagara*

*Transformer Corp.*, 57 F.4th 85, 96 n.6 (2d Cir. 2023); *E. Armata, Inc. v. Korea Com. Bank*, 367 F.3d 123, 131 n.10 (2d Cir 2004); *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 702 n.20 (2d Cir. 1980).

"It is not the province of the courts to add words to statutes that Congress has enacted." *Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.,* 30 F.4th 318, 331 (2d Cir. 2022); *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 347 (2024) (holding that adding words to a statute "so that the law as applied demands something more than the law as written" is an inappropriate method of statutory interpretation). Moreover, adding words to a statute and reordering its clauses is simply not a plain-text analysis.

To the extent they address the plain language of the statute at all, Appellees focus on the word "if," relying on the Eleventh Circuit decision in *Thompson v. Smith*, 805 F. App'x. 893, 908 (11th Cir. 2020), for the proposition that "a court 'must construe [the word "if"] to differentiate between the two subsets of cases where a prisoner is awarded fees: those where the prisoner's total fees do not exceed 150 percent of the judgment, and those where they do.'" Opp. Br. at 14. But the tortured analysis in *Thompson* – cited with approval by Appellees' here— demonstrates the folly of venturing beyond the plain language of the statute to imagine what Congress might have intended had it addressed other scenarios or "subset[s] of cases." *Thompson*, 805 F. App'x at 908.

In *Thompson*, the court summarized the inmate plaintiff's view of the statute as follows: "if the reasonable attorney's fee is less than 150% of the monetary judgment, the defendant is liable for the full amount. And if the reasonable fee is greater than 150% of the monetary judgment, the defendant is still liable for the full amount." *Id.* at 907. Over a dissent, the Eleventh Circuit rejected that interpretation on the rationale that "it would render the second sentence of the provision meaningless." *Id.* The Court then went on to adopt the following alternative explanation of the significance of the word "if":

> In the subset of cases where the prisoner's total attorney's fees amount to 150 percent of the judgment or less, the defendant must pay anything above the first 25 percent of the amount of the judgment. But a different rule governs the subset of cases where the prisoner's total fees amount to more than 150 percent of the judgment: there, the fees in excess of 150 percent of the judgment are not paid by the defendant; they are paid by the prisoner."

*Id.* at 908. This creative and expansive view of the meaning of the word "if" – adopting a rule for the subset of cases not addressed by the statute that has no basis in its language or legislative history – is, to say the least, a novel approach to statutory interpretation.

Notably, the *Thompson* court's "different rule" that governs the subset of cases where fees total more than 150 percent of the judgment – that plaintiff pays the remaining fees – is completely at odds with the first sentence of section (d)(2), which unqualifiedly provides that the portion of the judgment plaintiff contributes

toward fees is "not to exceed 25 percent." 42 U.S.C. § 1997e(d)(2). As the Supreme Court has construed that provision, "a district court must apply as much of the judgment as necessary to satisfy the fee award, without . . . exceeding the 25% cap," meaning that any time the fee award is equal to or greater than 25 percent of the judgment, the plaintiff is required to contribute a full 25 percent of the judgment to payment of attorneys' fees. *Murphy v. Smith*, 583 U.S. 220, 223-24 (2020).[1]

Beyond the fact that *Thompson* packs a lot of meaning into a two-letter word, Congress could not have meant the word "if" to incorporate, sub silentio, the proposed second subset of cases in which plaintiff would be required to both contribute a 25 percent portion of the judgment toward attorney's fees (pursuant to the first sentence of section (d)(2)) *and* assume the obligation to pay all fees exceeding 150 percent of the monetary judgment (required under *Thompson's* interpretation of the word "if"). Such a result would contravene the first sentence of

---

[1] In *Murphy v Smith*, 583 U.S. 220 (2020), the Supreme Court interpreted the first sentence in section 1997e(d)(2) as imposing a mandate that "a district court must apply as much of the judgment as necessary to satisfy the fee award, without . . . exceeding the 25% cap." *Id.* at 223-24. In this case, Appellees did not argue in the district court that the court was required to apply as much of the judgment as necessary to satisfy the fee award up to 25 percent of the award and, as acknowledged in their brief (Opp. Br. at 10), they did not cross-appeal from the judgment (which directed that plaintiff pay 1 percent of the fee award, deducted from the judgment). Accordingly, no issue relating to plaintiff's obligation to pay a portion of the attorney's fee award is before this Court.

section (d)(2), which limits plaintiff's contribution to no more than 25 percent of the judgment.

Appellees here do not follow *Thompson* all the way down the "if" rabbit hole – they understandably ignore this part of *Thompson's* nonsensical interpretation of the word "if," suggesting instead that "[i]n the latter subset, the defendant does not have to pay the fee award in excess of the 150% judgment." Opp. Br. at 14. But *Thompson's* flawed analysis demonstrates the peril of a court imagining what should occur if the condition precedent – the "if" clause – is not triggered. Moreover, despite the *Thompson* court's statement of what was to occur in the other subset of cases not expressly addressed by the statute – included to rebut the dissenter's contention that the majority interpretation failed to give effect to the word "if" – the *Thompson* court then reversed course and, in conclusory fashion, stated that the inmate plaintiff was not obligated to pay the excess portion of the fee award after all because "the award of attorney's fees cannot be 'greater than 150 percent of the judgment.'" *Thompson*, 805 F. App'x at 908. The dissenting Judge appropriately castigated the majority for imposing an attorney fee cap "that Congress never wrote" and employing the "'fallacy of the inverse,' or denying the antecedent" to reconstruct the statute rather than "constru[ing the] statute as it is written." *Id*. at 911-14 (Martin, J., dissenting).

8

This Court should revisit *Shepherd* and follow the well-reasoned analysis of the *Thompson* dissent. By its plain text, the disputed provision addresses what is to occur in one subset of cases: "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). The provision does not address any other scenario and there is no textual or other basis to infer that the provision applies at all if the condition precedent does not arise, much less that it should be interpreted as imposing a cap on attorney's fees, categorically prohibiting recovery of fees exceeding 150 percent of the judgment.

## II. The other decisions on which Appellees rely addressing 42 U.S.C. § 1997e(d)(2) have likewise failed to adhere to the plain text of the statute and should not be followed.

Among other decisions, Appellees rely on the First Circuit's analysis in *Boivin v. Black*, 225 F.3d 36 (1st Cir. 2000). But that reliance is misplaced because, among other reasons, in *Boivin* the inmate plaintiff did not dispute that the second sentence of section 1997e(d)(2) imposed a 150 percent fee cap in some circumstances but argued the cap should not apply in nominal damages cases. *See id.* at 38.

Nonetheless, the *Boivin* court opined that

[w]hile section 1997e(d)(2) is awkwardly phrased, its import and its essence are transparently clear: "[w]henever a monetary judgment is awarded" in an action covered by the PLRA and the prevailing party

> seeks attorneys' fees, *the defendant shall pay such fees up to a maximum of 150% of the judgment amount, and no more*.

*Id.* at 40 (emphasis added). This is the closest the *Boivin* court came to a textual analysis and the entire last clause of the interpretive gloss – "the defendant shall pay such fees up to a maximum of 150% of the judgment amount, and no more" – bears no relation to the actual statutory language. *Id.* While perhaps not as blatant as the analysis in *Thompson*, this construction implicitly engages in the logical fallacy of denying the antecedent, which this court has repeatedly held has no place in statutory interpretation. *See Admiral Insurance Co.*, 57 F.4th at 96 n.6; *E. Armata, Inc.*, 367 F.3d at 131 n.10; *Crouse-Hinds Co.*, 634 F.2d at 702 n.20; *Ryu v. Hope Bancorp, Inc.*, 786 F. App'x 271, 273 (2d Cir. 2019) (summary order).

 *Thompson*, 805 F. App'x 893, was clearly influenced by *Boivin*, echoing its assertion that subsection (d)(2) "is awkwardly phrased and 'inartful'" but means that "the award of attorney's fees cannot be 'greater than 150 percent of the judgment.'" *Id.* at 908 (quoting 42 U.S.C. § 1997e(d)(2)). But the second sentence of section 1997e(d)(2) is only inartfully phrased if it is misread as imposing a fee cap. Indeed, as several other courts have acknowledged, "the literal language of the statute" is fully consistent with the interpretation asserted here that the provision does not impose a fee cap. *See Foulk v. Charrier*, 262 F.3d 687, 704 (8th Cir. 2001); *Walker*, 257 F.3d at 667; *Harris v. Ricci*, 595 F. App'x 128, 134 (3d Cir. 2014). For reasons that are not entirely clear, those Courts nonetheless bypassed the statute's plain

language to adopt an erroneous construction of section 1997e(d)(2) at odds with its clear text.

In *Walker* – just as occurred in *Thompson* – the Court responded to an extreme argument offered by the plaintiff who took the position that defendants were always required to pay the full award (less the 25 percent portion attributed to plaintiff) regardless of whether it exceeded 150 percent of the judgment. As described by the Court, the plaintiff in *Walker* asserted that

> if the fee award is less than 150 percent of the damages, § 1997e(d)(2) applies and defendants are liable for the full amount of the award; if the award of fees is greater than 150 percent of the damages, *defendants are liable for the full amount of the award under pre-PLRA law*.

*Walker*, 257 F.3d at 667 (emphasis added). In order to avoid this analysis, the *Walker* court deviated from the plain language of the statute, concluding the second sentence of section 1997e(d)(2) must mean something other than what it says because Walker's position "renders the second sentence of [section 1997e(d)(2)] meaningless, and must therefore be rejected." *Id.* The *Walker* court did not discuss or cite any legislative history or other evidence of Congress's intent. *See generally Walker*, 257 F.3d 660.

Apparently blinded by an unpersuasive interpretation proffered by plaintiffs, the *Walker* court (like the *Thompson* court) failed to appreciate that it is not necessary to read a fee cap into section (d)(2) to give meaning to the provision or to

11

honor the PLRA's general intent to limit attorney's fee awards in claims brought by inmates. All that is necessary is that the provision be read in context. The majority opinion in *Walker* completely ignored the existence of sections 1997e(d)(1) and (d)(3), which also impose limitations on inmate fee awards. In so doing, the *Walker* court incorrectly treated section 1997e(d)(2) as if it were the only modification of the section 1988(b) attorney's fee regime and erroneously inferred that the second sentence of section 1997e(d)(2) must be interpreted as a cap on overall fees in order to give effect to the general congressional intent to limit attorney's fees in inmate cases—a position for which it provided no evidence of legislative intent. *See Walker*, 257 F.3d at 667.

### III. Appellees mischaracterize Mr. Webb's interpretation of the statute in an effort to align his arguments with those rejected in *Thompson* and *Walker*.

Appellees incorrectly argue that Mr. Webb's construction of the second sentence of section 1997e(d)(2) is "similar" to the construction advanced by the plaintiffs in *Thompson v. Smith* 805 F. App'x 893 (11th Cir. 2020); *Walker v. Bain*, 257 F. 3d 660 (6th Cir. 2001); and *Harris v. Ricci*, 595 F. App'x 128, 134-135 (3d Cir. 2014), which adopted *Walker's* analysis. *See* Opp. Br. at 16-18. But Appellees are mistaken. As previously explained, the plaintiffs in *Thompson* and *Walker* interpreted the provision to mean that a prevailing plaintiff is always entitled to recover 100 percent of the fees regardless of whether they exceed 150 percent of a

12

monetary judgment. That is not Mr. Webb's position. Much of the Appellees' brief addressing this straw man argument (and the analysis in *Thompson* and *Walker* rejecting it) simply fails to meaningfully respond to Webb's argument.

In his opening brief, Mr. Webb argued that, by its text, the second sentence of section 1997e(d)(2) applies only in the situation to which it specifically refers: "[i]f the award of attorney's fees is not greater than 150 percent of the judgment." 42 U.S.C. § 1997e(d)(2); *see* App. Br. at 13, 18-19. In that situation, after deduction of plaintiff's portion of the award (required by the first sentence of the provision), any remaining fees "shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). Mr. Webb further explained that "[t]he provision serves a practical benefit in the cases in which it applies: it forecloses extended litigation over attorney fee requests within 150 percent of a monetary judgment, including a directive that any excess after plaintiff's contribution 'shall be paid by the defendants,' effectively creating a presumption that such an award is reasonable and proportionate." App. Br. at 12.[2] This interpretation does not render the sentence "meaningless" or its provisions "unnecessary." *See* Opp. Br. at 18. When the provision is triggered – when the

---

[2] Appellees appear to agree that, whatever else it might do, the second sentence of section 1997e(d)(2) reflects a presumption that an attorneys' fee award that is less than 150 percent of the judgment is proportional. As they characterized it, "§ 1997e(d)(2) ensures that any fee award is proportional to any money judgments award[ed] by a court, but in more specific terms," Opp. Br. at 21. By referring to "more specific terms," it appears Appellees were drawing a contrast with the more general and discretionary proportionality requirement found in section 1997e(d)(1)).

13

attorney fees requested are less than 150 percent of the judgment – those fees are presumptively proportionate and, after deduction of the inmate plaintiff's contribution, defendants must pay the excess. If the statute were faithfully applied as written, this would reduce the number of contested fee applications and, thus, reduce the burden on district courts to adjudicate fee applications in the category of PLRA cases covered by the second sentence of section 1997e(d)(2).

According to its plain text, the provision provides no instruction regarding the treatment of attorney's fees greater than 150 percent of a judgment. However, the fact that a single sentence in the PLRA fee provisions does not address that category of fee awards does not result in an intolerable vacuum or justify conjuring a fee cap provision never considered, much less adopted, by Congress, because ample other provisions govern the treatment of those awards.[3] At a fundamental level, all awards are governed in some respect by the attorney's fee regime in 42 U.S.C. § 1988(b), which subjects fee applications to a court's discretion and requires fees to be

---

[3] Although Appellees seem to be troubled by the prospect, it is unremarkable that some provisions of section 1997e(d) apply to some inmate attorney's fee claims and others do not. For example, by its plain language, section 1997e(d)(2) applies only to fee awards arising from monetary judgments. Thus, when a court adjudicates a fee application that does not arise from a monetary judgment, section 1997e(d)(2) is not triggered, meaning that the court confines its analysis to the other PLRA provisions that do apply. Likewise, by its plain language, the second sentence of section 1997e(d)(2) applies only to fee awards that do not exceed 150 percent of the judgment – when that condition is not present, the court confines its analysis to the other PLRA provisions that do apply.

14

reasonable. Appellees seem to deny that this is so, arguing that "Webb's construction would require the court to graft a reference to § 1988(b) onto the statute." Opp. Br. at 18.

But this is not the case because the PLRA attorney's fee provisions specifically reference section 1988(b) multiple times. Section 1997e(d)(1) provides: "In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except" pursuant to certain requirements set forth in the remainder of the statute. Section 1997e(d)(1)(A) mentions section 1988 again, indicating that a few may be awarded if it "was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988." Moreover, section 1997e(d)(2) begins with a reference to section 1997e(d)(1), which – as noted – explicitly references section 1988 ("Whenever a monetary judgment is awarded in an action described in paragraph (1)"). No fee may be collected under section 1997e(d) that would not have been authorized under section 1988, meaning that section 1988 is foundational to every fee award in a civil rights action.

Nor does the conclusion – based on a plain language interpretation of the second sentence of section 1997e(d)(2) – that the sentence is inapplicable to fees exceeding 150 percent of the judgment mean that the PLRA imposes no limitations

15

on the fees that may be recovered by an inmate plaintiff, leaving only section 1988 (as the plaintiff apparently argued in *Walker*, 257 F.3d at 667). To the contrary, eschewing the more expansive prevailing party analysis, section 1997e(d)(1) limits recoverable attorney's fees in inmate actions to those "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and those "proportionately related to the court ordered relief." 42 U.S.C. § 1997e(d)(1).[4] Section 1997e(d)(3) precludes any award of attorneys' fees from being "based on an hourly rate greater than 150 percent of the hourly rate established" in another statute relating to payment of court-appointed counsel.

Further, all fee awards emanating from monetary judgments remain subject to the first sentence of section 1997e(d)(2), which unconditionally requires that "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant," a mandate that reduces the financial burden on defendants that, like Appellees, were found to have committed civil rights violations. Any attorney's fee application arising from a

---

[4] With respect to actions brought to enforce relief ordered by a court, section 1997e(d)(1) eliminates the proportionality mandate, requiring only that the fees be "directly and reasonably incurred in enforcing the relief ordered[.]" 42 U.S.C. § 1997e(d)(1)(B)(ii). This provision does not apply here because the fees awarded do not arise from an enforcement action. Just as is the case with the second sentence of section1997e(2)(d), this provision related to fees generated in enforcement proceedings does not apply to all inmate attorney's fee claims; where a provision of the statute is inapplicable, the award must be analyzed pursuant to the other statutory provisions that do apply.

monetary judgment in an action brought by an inmate pursuant to 42 U.S.C. § 1983 remains subject to these PLRA provisions, which significantly curtail judicial discretion in fashioning awards and do not guarantee recovery of any amount of a fee award. For this reason, Appellees' suggestion that Mr. Webb's interpretation of the statute results in a default to section 1988's attorney's fee methodology, *see* Opp. Br. at 18, obviating the PLRA, is patently meritless.

In monetary judgment cases, when the condition in the second sentence of section1997e(d)(2) is not triggered, the result is that there is no specific, numerical presumption guiding the district court's proportionality analysis, meaning such awards are likely to be contested and fully litigated, with the burden on plaintiff to prove that an award that exceeds the presumptively proportional ratio (150 percent of the judgment) is nonetheless proportionate and justified under the facts and circumstances of the particular case. Thus, properly interpreted, section 1997e(d)(2) impacts the procedure for adjudicating attorney's fee claims, functionally streamlining the process for resolving awards that do not exceed 150 percent of the judgment (and likely incentivizing plaintiffs to fashion fee requests in a manner that triggers the provision in close cases).

In this case, while the district court was bound by this Court's decision in *Shepherd* to treat the second sentence of section 1997e(d)(2) as a fee cap, it did, in a sense, apply the presumption because the court granted a fee award of 150 percent

of the judgment, without analyzing the particulars of plaintiff's attorney's fee application.  Should this Court reverse and remand this matter, the district court would have to assess, in the first instance, whether attorney's fees exceeding 150 percent of the judgment would be appropriate, proportional, and based on an hourly amount within the rate established by 18 U.S.C § 3006A in the circumstances presented here, addressing the arguments Appellees asserted below which, among other things, challenged the number of attorneys involved, their appropriate hourly rates, the number of hours billed, expenses incurred and the like.  There is no guarantee that this would yield a larger fee award, although Mr. Webb believes that a larger award is justified here.

Mr. Webb's plain language interpretation gives meaning to the second sentence of section 1997e(d)(2), which provides that, in the limited circumstance that an award of attorney's fees is not greater than 150 percent of a monetary judgment, the defendant shall pay the excess of the fee award (after deduction of plaintiff's mandatory contribution), thereby curtailing protracted litigation over attorney's fees in that situation.  When that circumstance is not present, the provision is inapplicable, meaning the attorney's fee award is adjudicated pursuant to the remaining PLRA provisions that do apply.  This approach is not accurately described as "infer[ring] from silence that Congress did not intend any fee cap for fee awards over 150% of the judgment."  *See* Opp. Br. at 15.  Mr. Webb's conclusion is not

based on an inference from silence – it is based on a plain text interpretation of the language chosen by Congress, the absence of any statutory language imposing a fee cap of any kind, the fact that, as discussed hereafter, there is no indication in the legislative history of the PLRA that Congress even so much as considered imposing a fee cap, and the surrounding statutory regime, which indicates that Congress knew how to impose clear caps when it intended to do so. *See, e.g.*, 42 U.S.C. § 1997e(d)(2), (d)(3); 18 U.S.C. § 3006A(d)(2).

## IV. Appellees fail to cite any legislative history supporting their construction of the statute, instead relying on language from a House of Representatives report relating to a differently worded piece of legislation that never became law.

As argued in Mr. Webb's main brief, there is nothing in the legislative history of the PLRA indicating that Congress considered, much less intended to adopt, a provision capping attorney's fees at 150 percent of the judgment. *See* App. Br. at 11-18. Appellees do not counter this argument with any citation to the congressional record relating to the PLRA. Instead, Appellees cite a House of Representatives report prepared in connection with a different piece of draft legislation, the Violent Criminal Incarceration Act of 1995 (VCIA), which never became law. *See* Opp. Br. at 20-24 (citing H.R. Rep. No. 104-21 (1995)). Needless to say, this document is of little assistance in guiding this Court's interpretation of the PLRA, particularly as the House VCIA bill – which was rejected by the Senate – contained no analog to

section 1997e(d)(2).[5] *See* H.R. Rep. No. 104-21 (1995). The legislation Congress ultimately enacted – the PLRA – differed in significant respects from the VCIA, which, among other things, covered only "prison conditions" claims.

Appellees quote language from the VCIA report discussing a proportionality requirement, which "will discourage burdensome litigation of insubstantial claims where the prisoner can establish a technical violation of a federal right but he suffered no real harm from the violation." Opp. Br. at 3-4 (quoting H.R. Rep No. 104-21 (1995)). But this statement could not have referred to the 150 percent provision in section 1997e(d)(2) – which was not part of that legislation. To the extent that house members in a bill that was not passed sought to right-size attorney's fee awards, they apparently felt that the VCIA's general proportionality requirement (stating awards should be "proportionally related to the extent the plaintiff obtains court ordered relief), which ultimately appeared in slightly modified form in section 1997e(d)(1) of the PLRA – and which is undisputedly applicable to this

---

[5] The draft VCIA provided, in relevant part:
(f) Attorney's Fees. No attorney's fees under section 772 of the Revised statutes of the United States (42 U.S.C. 1988) may be granted to a plaintiff in a civil action with respect to prison conditions except to the extent such fee is—
(1) directly and reasonably incurred in proving an actual violation of the Plaintiff's federal rights; and
(2) proportionally related to the extent the plaintiff obtains court ordered relief for that violation.
H.R. Rep. No. 104-21 (1995).

attorney's fee request – was sufficient to accomplish that goal. The language cited by the Appellees relating to different legislation simply does not support their argument that section 1997e(d)(2) was intended to impose an attorney's fee cap or, for that matter, that any such fee cap was adopted in order to discourage meritorious but low-value claims.

Lacking any actual supportive legislative history, Appellees rely on language in judicial decisions, such as *Robbins v. Chronister*, 435 F.3d 1238 (10th Cir. 2006); *Boivin*, and *Parker v. Conway*, 581 F.3d 198 (3d Cir. 2009), which likewise did not identify any supportive legislative history relating to the adoption of the PLRA. *See generally*, *Parker*, 581 F.3d 198; *Robbins*, 435 F.3d 1238; *Boivin*, 225 F.3d 36. For example, without citation, the *Parker* court speculated that "capping the amount of attorney's fees a court may award to a prevailing prisoner plaintiff may cause a prisoner to evaluate more carefully the merit of the action he intends to file." 581 F.3d at 204. The *Boivin* court similarly opined that

> Congress could well have reasoned that applying the fee cap to nominal damage awards would encourage both prisoners and members of the bar to weigh the likely value of claims before proceeding to court, thus reducing the overall number of prisoner suits and easing the perceived burden of prisoner litigation on the justice system.

225 F.3d at 41. But the *Boivin* court did not identify any relevant legislative history supporting an inference that the PLRA's sponsors intended to handicap meritorious

litigation brought by prisoners vindicating their constitutional rights. Indeed, no such language exists. *See* 141 Cong. Rec. S14413-20 (daily ed. Sept. 27, 1995).

In *Shepherd*, this Court similarly reasoned that "Congress was . . . free to limit the incentive for prisoners pursuing dubious or low-value claims." *Shepherd*, 662 F.3d at 609. But the fact that Congress had the power and *could have adopted* a fee cap provision to further such an objective is not a substitute for legislative history (or, for that matter, clear text) indicating Congress actually intended to do so. If Congress intended to impose a fee cap, precluding recovery of attorney's fees exceeding 150 percent of the judgment, there is no reasonable explanation for its failure to clearly say so in section 1997e(d)(2), particularly given that it unambiguously imposed an hourly-rate cap in the very next subsection of the statute. *See* 42 U.S.C. § 1997e(d)(3) ("No award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established" in another statute relating to court-appointed counsel).

The *Shepherd* Court's interpretation of section 1997e(d)(2) as imposing a cap on attorney's fee awards exceeding 150 percent of the judgment is neither supported by the plain text of the statute nor any relevant legislative history. This Court should correct the interpretive error in *Shepherd* to ensure that meritorious constitutional claims are properly incentivized and compensated consistent with Congress's plain statutory language.

**V.     The Court should invoke the mini-*en banc* procedure, revisit its analysis and holding in *Shepherd*, and correct that decision's erroneous interpretation of section 1997e(d)(2).**

It is axiomatic that courts are "bound by the language of the statute as it is written" *Comm'r of Internal Rev. v. Lundy*, 516 U.S. 235, 252 (1996)). "When interpreting a statute, [courts begin] by giving effect to the text's plain meaning[.]" *J.S. v. N.Y. State Dep't of Corr.*, 76 F.4th 32, 38 (2d Cir. 2023) (citing *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021)). Although the *Shepherd* court held that the second sentence of section1997e(d)(2) was "not so ambiguous as to require [the Court] to resort to canons of statutory construction or to legislative history to discern its meaning[,]" *id.* at 607, the Court nevertheless violated basic tenets of statutory interpretation by re-ordering the clauses of the statute and adding words not adopted by Congress, giving the statute a meaning inconsistent with its plain text, largely relying on mistaken dicta from previous cases. *See Torres v. Walker*, 356 F.3d 238, 242 (2d Cir. 2004); *Blissett v. Casey*, 147 F.3d 218, 220 (2d Cir. 1998).

Mr. Webb's reading of the second sentence of section 1997e(d)(2) does not require textual gymnastics or unsupported speculation about Congressional intent to "give meaning" to section 1997e(d)(2). The statute's meaning and scope is clearly discerned from its plain language: "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42

U.S.C. § 1997e(d)(2). In all other situations, the second sentence of section 1997e(d)(2) is inapplicable and the fee application is governed by the remaining, applicable provisions of the PLRA. The Court should employ its mini-*en banc* procedure to rectify the error in *Shepherd's* holding so that the second sentence of section 1997e(d)(2) can be applied as Congress intended.

## CONCLUSION

For the foregoing reasons, this Court should exercise the mini-*en banc* procedure, hold that 42 U.S.C. § 1997e(d)(2) does not impose a cap on attorney's fees, and remand this matter to the district court for further proceedings consistent with its decision.

Dated: Albany, New York
      June 2, 2025

**HARRIS BEACH MURTHA**
**CULLINA PLLC**

By: */s/ Elliot A. Hallak*
    Elliot A. Hallak
    Brian D. Ginsberg
    Lisa A. LeCours
    David J. Panzarella
    677 Broadway, Suite 1101
    Albany, New York 12207
    Tel: (518) 701-2748

    *Attorneys for Appellant*
    *Michael Webb*

24

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,118 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
     June 2, 2025